IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

JOHN A. GALLONI,

       Plaintiff,

V.                                               CIVIL ACTION NO. 3:06-0953

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

**<u>MEMORANDUM ORDER</u>**

In this action, filed under the provisions of 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his application on June 16, 2003, alleging disability commencing December 27, 2002, as a consequence of "aneurysm-brain, high blood pressure, right knee surgery, nerves, arm/leg pain, back pain-fractured vertebras." On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-five years of age and had obtained a high school education. His past relevant employment experience consisted of work as a truck driver. In his decision, the administrative law judge found that plaintiff suffered from

"degenerative disc disease, compression fracture of the lumbar spine, carpal tunnel syndrome, and hypertension," impairments which he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined he had the residual functional capacity for a limited range of sedentary level work. On the basis of this finding, and relying on Rule 201.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, the administrative law judge found plaintiff not disabled.

From a review of the record, it is apparent that deficiencies exist that will require remand for further proceedings. The medical evidence shows that plaintiff fell from a truck at work on or about December 27, 2002, his alleged onset date, and since has been treated for degenerative disc disease, compression fracture of the L2 vertebra, cubital tunnel syndrome, carpal tunnel syndrome, and hypertension. Treatment was provided by Dr. Bal Bansal, Dr. Ralph Touma, and Dr. Robert Lowe. Dr. Lowe, an orthopedic surgeon, began seeing plaintiff on December 31, 2002. He treated plaintiff through the use of a Jewett brace, physical therapy, and medication. Plaintiff began seeing Dr. Bansal, a neurologist, on April 1, 2003. Dr. Bansal's treatment consisted mostly of pain

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

management and he has prescribed Mobic[3], Zanaflex[4], and Lorcet Plus[5] for the duration of his treatment. Dr. Touma began seeing plaintiff on July 21, 2003, at the referral of Dr. Bansal, for the treatment of carpal and ulnar tunnel syndromes. Dr. Touma performed several surgeries intended to remedy plaintiff's carpal tunnel and cubital tunnel syndromes and also to remove an infected bursa sac.[6]

The record contains multiple Residual Functional Capacity Assessments/Evaluations ("RFCEs"). The first of these was completed on July 30, 2003 by Dr. Bansal, who was of the opinion that plaintiff was capable of occasionally lifting and carrying fifty pounds; frequent lifting and carrying of twenty-five pounds; and standing, walking, and/or sitting for six hours of the eight hour workday. He concluded that plaintiff's Residual Functional Capacity ("RFC") was reduced to medium work because of pain and fatigue. A second RFCE was completed on September 16, 2003 by a state agency physician with similar findings, an RFC reduced to medium. Later, on December 18, 2003 Dr. Bansal completed another RFCE in which he found plaintiff had no exertional limitations, but he should never climb ramps, stairs, ladders, ropes, or scaffolds; never crouch; never

---

[3]Mobic is a nonsteroidal anti-inflammatory drug. Physicians' Desk Reference, 2009 PDR 0860-0200.

[4]Zanaflex is generically referred to as tizanidine, and is a short acting muscle relaxer. Zanaflex is used to treat spasticity by temporarily relaxing muscle tone. See Mosby's Medical Drug Reference, *tizanidine*.

[5]Lorcet Plus tablets are used to relieve moderate to moderately severe pain. See Mosby's Medical Drug Reference, *hydrocodone.*

[6]At the time of the hearing plaintiff testified to having had five (5) surgeries on his hands and elbows. The record also shows that subsequent to the hearing plaintiff underwent two (2) more surgeries to relieve nerve entrapment.

crawl; and only occasionally balance, stoop, and kneel.  Dr. Bansal completed a third RFCE on April 27, 2006.  In this final RFCE he concluded that plaintiff could only occasionally lift less than ten pounds; frequently lift less than ten pounds; stand, walk, and/or sit for less than two hours of an eight hour workday; must alternate standing and sitting every twenty minutes; is not capable of performing any pushing or pulling; and can never climb, balance, stoop, kneel, crouch, or crawl.

      Plaintiff testified at the March 30, 2004 hearing that he could not drive because his driver's license was suspended as a result of a DUI; that he has to get up from a seated position every five to six minutes; he does not go to the grocery store because he cannot stand or walk for an extended period of time; he stated he could only walk about fifty yards before he would have to stop; and the most he can lift is a two-liter bottle of Pepsi.  He spends most of his day lying on his side because standing and sitting cause him too much pain.  He occasionally wears a back brace.  He does not use a cane to ambulate, and he does not require a Trans Neuro Stimulator to control his pain.  Plaintiff stated that he would rate the pain in his back, neck, elbows, and hands an eight, on a scale of one to ten. According to plaintiff, his upper and lower back problems cause him the most trouble.  During the day he lies on his right side to relieve the pressure on his back and neck.  He stated that he is capable of picking up coins, making a sandwich, and turning pages in a book.  However, he stated that he has a tendency to drop things frequently.  He has trouble getting dressed, i.e. is unable to bend over to tie his shoes or put on pants.  His leg goes numb every day, worsened by changes in weather. He testified that he has had two surgeries on his right knee, which still causes him pain; however, there is no evidence in the record to support this contention.

      A vocational expert was also questioned at the hearing, and he averred that plaintiff had no transferable skills.  Relying on the second RFCE by Dr. Bansal dated December 18, 2003 and the

hypothetical questions posed by the ALJ, the vocational expert concluded that plaintiff would be capable of performing a limited range of sedentary work. Specifically, he could perform the work of a security monitor, a production inspector, and a hand packer. There are a significant number of these jobs, both nationwide and regionally. However, the vocational expert testified that if he were to rely on plaintiff's testimony, he would have to conclude that plaintiff was incapable of performing any work because of the pain and limitations mentioned. In response to the vocational expert's specific mention of pain, the ALJ requested a readout from the pharmacy, reflecting the amount of pain medication being consumed by the plaintiff. This was received by the ALJ some time after the hearing.

It is unclear to this Court whether the correct pain standard was applied to the facts of this case and therefore remand is warranted. In order to properly evaluate a claimant's pain and credibility the adjudicator is required to perform a two-step analysis. First, the adjudicator must consider whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the individual's pain or other symptoms.[7] Once this has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms.[8] The ALJ recites this standard in his opinion, but he does not make a determination whether plaintiff's symptoms could be reasonably caused by his severe impairments. He went through the medical evidence and listed his symptoms, but he never made a connection between the symptoms and an impairment. The ALJ then merely made a conclusory statement that he is convinced "plaintiff has some pain," but "his allegation of total disability was not credible."

---

[7] See 20 C.F.R. § 404.1529(b); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

[8] Id.

It appears that the ALJ did find plaintiff's pain was established by the evidence, but his analysis of the intensity, persistence, and limiting effect is lacking the detail necessary for this Court to conduct a reasoned review.

The record, when read as a whole, clearly shows continued complaints of pain by plaintiff to Dr. Bansal. The ALJ requested and received a pharmacy printout indicating that plaintiff has filled a prescription for pain medication every month. Although this evidence does not establish the pain itself, it clearly shows that his treating physician thought it necessary to alleviate pain through the use of powerful opiates, as opposed to the use of less powerful drugs.⁹ Additionally, there are numerous office visit notes that indicate spasms in the cervical and lumbosacral areas, with limited cervical and dorsal lumbar spine movements. This objective medical evidence is the kind that is described in the regulations and in Social Security Ruling 96-7p that should be considered by the Commissioner in determining the credibility of the plaintiff's subjective testimony as to the intensity of his pain.

Additionally, plaintiff has had numerous surgeries on his hands and arms, both before and after the administrative hearing. There is medical evidence in the record, office notes and reports to the Worker's Compensation Office by Dr. Bansal, indicating continued pain, and treatment thereof, as well as continued problems with the use of his hands long after the hearing. However, the

---

⁹Plaintiff was prescribed 60 Lorcet Plus tablets per month by Dr. Bansal. In addition to the amount prescribed by Dr. Bansal, Dr. Touma thought it necessary to also prescribe pain medication during his treatment of plaintiff. It appears that beginning on August 24, 2004 Dr. Bansal increased this amount to 90 tablets per month, and also prescribed a Lidoderm patch to wear directly on the lower back and cervical area. Application of a Lidoderm patch is another way to relieve pain. See Physicians' Desk Reference, 2008 PDR 2620-0310.

ALJ dismissed his hand symptoms, stating that they responded to treatment.[10] There is a significant amount of medical evidence that suggests that his hand symptoms at first responded to treatment, only to regress and require further surgical intervention. This is an area where further inquiry is necessary, and an explanation by the ALJ of the weight given to the evidence is also needed. Lastly, it is unclear what degree of manipulative limitation the ALJ imposed on plaintiff as a result of his hand impairments. During questioning of the vocational expert the ALJ described plaintiff's hand limitations as moderate as opposed to severe; however, Dr. Bansal stated in his final RFCE, as well as multiple office notes, that plaintiff should not perform any repetitive hand motions. On remand, the Commissioner needs to clarify the manipulative limitations placed on plaintiff as a result of his hand impairments. The parties should be permitted to submit additional evidence, and the Commissioner shall then re-evaluate the claim based on all of the evidence in the record, including any newly submitted materials.

On the basis of the foregoing, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this Memorandum Order.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: June 11, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10] See Tr. at 19.